E. R. KEPLINGER, Respondent, v. HANS PETERSON, Appellant.

; (180 N. W. 803.)

**Replevin — evidence sustaining finding of actual division of wheat.**

This is a replevin suit to recover 140 bushels of wheat. The jury found for the plaintiff, found that he owned the wheat, 135 bushels, and was entitled to the immediate possession. of it and that its value was $325.55. The defendant has had a fair trial, and the verdict is correct and well sustained by the evidence.

Opinion filed December 11, 1920. Rehearing denied December 17, 1920.

Appeal from the District Court of Williams County, Honorable *K. E. Leighton,* Judge.

Affirmed.

*Paul Campbell,* for appellant.

Plaintiff not being owner of, nor entitled to possession, cannot maintain this action. 23 R. C. L. 14, 15; 34 Cyc. 1387–1390; Esshom v. Watertown Hotel Co. (S. D.) 63 N. W. 229; Angell v. Egger, 6 N. D. 398; Kemmeth v. Dietrich (S. D.) 119 N. W. 986; Haveron v. Anderson, 3 N. D. 542; Truman v. Dakota Trust Co. 29 N. D. 456; Smythe v. Mari, 34 N. D. 246, and cases cited; Keerbow v. Young (S. D.) 8 L.R.A.(N.S.) 316; Donovan v. Block, 17 S. D. 406.

An offset is not payment of tender until agreed to as such by the creditor, nor it is operative as payment to vest title or right to possession. 21 R. C. L. pp. 45, 83; 30 Cyc. 1187; 24 Cyc. 1191.

Division requires separation coupled with delivery of possession and intent to divide and deliver and pass title and ownership, and right to possession. Simmons v. McConville, 19 N. D. 793; Angell v. Egger, 6 N. D. 398; 26 L.R.A.(N.S.) 30 note; Hawk v. Konouski, 10 N. D. 41; State Bank v. Hurley, 33 N. D. 272; 17 C. J. 382; 8 R. C. L. p. 376; Herman v. Minnekota, 27 N. D. 240; Lallie v. Elevator Co. (S. D.) 127 N. W. 558.

Until division, the farmer or tenant has no ownership, title, or right to possession sufficient for replevin or claim and delivery. Angell v. Egger, 6 N. D. 398; Hawk v. Konouski, 10 N. D. 41; 17 C. J.

382; 8 R. C. L. p. 376, ¶ 19; Simmons v. McConville, 19 N. D. 793; Wadsworth v. Owens, 21 N. D. 255; 24 Cyc. 1472.

*Usher L. Burdick* and *Ivan V. Metzger*, for respondent.

ROBINSON, J. This is an action in claim and delivery. The complaint avers that in March, 1918, defendant unlawfully took from the possession of the plaintiff, carried away, and converted to his own use 140 bushels of wheat, the property of the plaintiff, of the value of $2.30 a bushel. The defendant rebonded and retained the wheat. The verdict is: "We, the jury, find for the plaintiff, and find that he is entitled to the immediate possession of 135 bushels of wheat, and that the value of the wheat at the time and place of taking by the defendant, and his damages in securing possession of the property, is $325.55." The judgment is that the defendant immediately deliver to the plaintiff 135 bushels of wheat of the grade dark northern, or pay him $325.55, with interest and costs. The pleadings and proof show that the wheat was produced on a tract of land which the plaintiff farmed during the season of 1918 under an agreement with the defendant, and that at the time of the threshing the wheat grown on the land was divided between the plaintiff and the defendant. The 135 bushels was a part of plaintiff's share, and to secure the plowing of 80 acres, more or less, it was put into a bin on the land. In the autumn of 1918 the plaintiff was not able to do the plowing because of an unusual early winter, but he did it in the spring of 1919, and within the time agreed and before the trial of the action. The pleadings present several other matters which are in no way material to this case, because the specific verdict and the evidence show that the plaintiff owned 135 bushels of wheat; that defendant wrongfully took the same from possession of the plaintiff; and that the wheat was worth the sum stated in the verdict. The defendant was given the right to return the wheat instead of paying its value, and he did not return the wheat or offer to return it. Though the pleadings and the evidence contain a mass of immaterial matter, the specific verdict shows that the jury considered only the real issue,—the right of the plaintiff to recover the wheat or its value.

Affirmed.

GRACE and BIRDZELL, JJ., concur.

BRONSON, J. (specially concurring). I concur in the affirmance of the judgment. The defendant principally contends that the record does not disclose an actual legal division of the grain which is the subject-matter of this action in claim and delivery, and, further, that under the croppers' contract existing between the parties and covering this grain, the defendant retained the title and the right to the possession of this grain, until full performance of the conditions therein imposed on the part of the plaintiff, to be performed. Upon an examination of this record, we are fully satisfied that the jury were warranted in finding that there was an actual division of this grain made between the parties about the time of the threshing, and a release thereby, on the part of the defendant, of any title or right of possession that he then had under the contract. The jury's verdict accordingly is determinative of defendant's claims. It is deemed unnecessary to consider in detail the numerous specifications of error made by the defendant. It is sufficient to state upon this record that the court fairly instructed the jury, and did not err prejudicially in the admission of evidence. The judgment as rendered is proper and sustained by evidence in the record.

CHRISTIANSON, Ch. J. (dissenting). I dissent. As stated in the majority opinion, the grain involved in this controversy was produced in the year 1918. It was raised on certain land belonging to the defendant. Plaintiff farmed this land under a contract, which provided, *inter alia,* "until all the covenants and agreements to be performed by the party of the first part (plaintiff) shall have been fulfilled and . . . division made the title and possession of all crops . . . and products raised, grown, or produced on said premises shall be and remain in the party of the second part (the defendant)." It is true, as stated in the majority opinion, that at the time the grain was threshed it was in fact divided by the "separator-man" into two parts, one equal to that which belonged to the defendant, and the other equal to that which would belong to the plaintiff, and which he would be

entitled to receive, upon the performance by him of what he had agreed to perform under the contract. It is undisputed that at the time the grain was threshed plaintiff had not done certain things which he was required to do under the contract. For instance, he had not plowed a certain number of acres which he was required to plow back. At the time the grain was threshed, 250 bushels of plaintiff's share of the wheat was placed in a bin on the land where it was grown. Plaintiff says that it was placed there with the understanding that it was to be held as security for the plowing which plaintiff was obligated to do by the terms of the contract. It is therefore contended, by plaintiff's counsel, that the grain was in fact and in law divided under the terms of the contract, and that title vested in each of the parties to their respective shares; and that the 250 bushels of wheat could be held as security for the plowing only, and not for the performance of any of the other obligations under the contract.

It is true, as stated in the majority opinion, the evidence does show that at the time the grain was threshed, the separator-man divided the grain into two equal parts. The defendants testified that nothing was said at the time in regard to division. There is no basis in the evidence, however, for the claim that defendant intended to turn over to plaintiff all of the grain which the contract stipulated should eventually belong to the plaintiff, or that defendant intended to waive his rights to retain such grain as security for the performance by the defendant of those acts which he had agreed to perform under the contract. On the contrary defendant testified that he never consented to the removal by the plaintiff of such grain. And the evidence shows that, prior to the threshing, there was an understanding between the parties upon this matter. This is not disputed.

Plaintiff testified:

Q. Did you have a talk with him (defendant) there about what was to be done with this wheat when it was threshed?

A. Yes, sir.

Q. Did he ask you to put it in his shack on this place? In his building there, this wheat of yours?

A. He did before we separated. . . .

Q. Did he tell you that he wanted it held out until you had performed the contract and paid him what you owed him?

A. I already knew he would hold it. . . . I asked him if it would be satisfactory with him if I built a bin by the side of the separator and run my share or at least 250 bushels of my share of the wheat into that bin and leave it on his place until I finished the plowing. . . .

Q. And it was understood that he was to hold this grain until you had paid up and performed the contract on your part, was it?

A. It was understood in the contract that I was to leave 250 bushels of wheat.

Q. It was understood at the time that you had this grain poured into your bin and the grain poured into his wagon that that was what was to be done with the part run into your bin, held by him until you performed the plowing specified under your contract and did what you were to do under it?

A. It was understood that that grain was to stand as security for my fulfilment of the contract. . . .

Q. In other words, he was holding it there to fulfil the contract.

A. Certainly. . . . He told me at all times that this grain was to remain in his hands until the fulfilment of the contract.

Q. And he never told you that you could take it or have it at all?

A. Certainly not; I had no desire to take it.

The court instructed the jury: "I also charge you that when grain is separated by the parties or in their presence, and no agreement is made that such agreement shall constitute a division, then such action constitutes a division."

I do not believe that it follows as a matter of law that the mere separation of grain into parts at the time of the threshing constitutes a division thereof under the terms of a farm contract like that under consideration here. Whether there was or was not such a division would depend on what the parties to the contract intended. Manifestly it is more convenient to make physical division of the grain at the time it is threshed, but there is no reason why the grain might not still remain subject to the terms of the contract. That seems to have been the case here. In view of the evidence, which I have quoted above, I am of the opinion that the instruction quoted was prejudicial to the defendant.

In his complaint the plaintiff alleged that he had been damaged,

among other things, in the sum of $75, attorney's fees expended in this action. And upon the trial he was permitted, over objection, to introduce evidence to the effect that he had agreed to pay his attorney $75 for bringing the action. In its instructions the trial court informed the jury that if plaintiff was entitled to recover at all, he might "also recover his necessary expenses in recovering the property." The jury was therefore permitted to allow the plaintiff as part of his damages in this case the attorney fees incurred or charged against him for bringing this action. In my opinion such attorney fees were not a proper element of damages in this case, and it was error to admit evidence relating thereto, and to permit the jury to consider it.

It seems, also, that even under plaintiff's version of the controversy, the action was instituted prematurely. Plaintiff testified that he did not finish the plowing until May 6, 1919. This action was commenced April 12, 1919.

The various propositions to which I have alluded were raised in the trial court. As already indicated, I am of the opinion that the trial court erred, to the prejudice of the defendant, and that the judgment should be reversed and the case remanded for further procedings according to law.